Adam W. Cook, ABA #0611071
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, AK 99501
Telephone: 907.276.1550
Facsimile: 907.276.3680
acook@bhb.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| AHTNA DESIGN-BUILD, INC., an Alaska corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>ASPHALT SURFACING, INC., a California corporation, and UNITED FIRE & CASUALTY COMPANY Bond No. 54-197210,<br><br>    Defendants. | Case No. 3:21-cv-_____ |

## **COMPLAINT**

COMES NOW Plaintiff, Ahtna Design-Build, Inc. (hereinafter "ADB"), by and through undersigned counsel, Birch Horton Bittner & Cherot, and hereby complains and alleges as follows:

AHTNA DESIGN-BUILD V. ASPHALT SURFACING
COMPLAINT
508540/1/ 01124736.DOCX

CASE NO. 3:21-CV-_____
PAGE 1 OF 13

Case 3:21-cv-00228-SLG     Document 1     Filed 10/14/21     Page 1 of 13

## PARTIES

1. ADB is a corporation organized and existing under the laws of the State of Alaska, and has maintained all other prerequisites to maintain this action.

2. Upon information and belief, Asphalt Surfacing, Inc. (hereinafter "ASI") is a corporation organized and existing under the laws of the State of California.

3. Upon information and belief, United Fire & Casualty Company (hereinafter "UFCC") is an Iowa corporation organized and existing under the laws of the State of Iowa, and an issuer of surety bonds required by law or contract by the United States of America, and is obligor of Bond No. 54-197210.

## JURISDICTION AND VENUE

4. This Court has Diversity jurisdiction over this case, pursuant to 28 USC §§ 1332, 1441, and 1446.

5. This Court has personal jurisdiction over Defendants pursuant to an agreement between ADB and ASI (described in greater detail below) consenting to the personal jurisdiction of a court of competent jurisdiction located in Anchorage, Alaska.

6. Venue is proper in this judicial district pursuant to an agreement between ADB and ASI agreeing to venue in a court of competent jurisdiction in Anchorage, Alaska.

## FACTS

7. ADB is a provider of construction and engineering services headquartered in Alaska and with offices in California.

8. ADB is prime contractor for an indefinite-delivery indefinite-quantity contract with the U.S. Army Mission Installation Contracting Command – Fort McCoy (the "Government"), Contract number W911SA-18-D-2002.

9. Task order W911SA20F2191 of the Government contract requested roadway maintenance of asphalt roads located at Fort Hunter Liggett, California (the "Project").

10. The Project consisted of resurfacing approximately 750,000 square feet of asphalt in three steps. The first step consisted of removing existing pavement markings, cleaning and preparing the surface, filling cracks with asphalt patching, and replacing pavement in areas of excessive damage.

11. The second step consisted of application of a "Cape Seal," composed of a micro-surfacing chip seal followed by a Type II Slurry Seal. The Project specifications specified that the composition of the slurry seal would follow the California Department of Transportation standard specifications.

12. The final step of the Project was replacement of thermoplastic pavement markings, including parking stalls and signage.

13. ASI is a paving contractor headquartered in Milpitas, California. ADB and ASI entered into a Subcontract for Construction Services (the

AHTNA DESIGN-BUILD V. ASPHALT SURFACING
COMPLAINT
508540/1/ 01124736.DOCX

CASE NO. 3:21-CV-_____
PAGE 3 OF 13

Case 3:21-cv-00228-SLG   Document 1   Filed 10/14/21   Page 3 of 13

"Subcontract"), in which ASI agreed to perform all Project work for a firm fixed price of $1,108,107.29.

14. Per the requirements of the Subcontract, ASI secured a performance bond in the amount of the Subcontract price: UFCC Bond No. 54-197210 (the "Bond"). ADB is principal on the Bond.

15. ADB gave notice to proceed with the 90-day Project on November 2, 2020.

16. Both during the work and afterwards, ADB noticed defects in ASI's performance. The first category of problems was cosmetic problems created during the application of the Cape Seal (i.e. splattering, debris, and insufficiently thick sealant).

17. The second category of problems was unexpected damage to the new road surface caused by ordinary vehicle traffic (i.e. scuffing, tread marks, and oil "bleeding"). ADB also noticed defects in the application of thermoplastic lines and signage, such as incomplete or irregular placements.

18. On February 9, 2021, ADB delivered to ASI a summary of corrective work needed at the Project.

19. Representatives of ADB and ASI conducted a "site walk" at the Project site. During this site walk, the parties observed defects in the work that ASI needed to correct, including both the cosmetic problems and the unexpected damage described above. ASI agreed to send ADB a plan for performance of

AHTNA DESIGN-BUILD V. ASPHALT SURFACING
COMPLAINT
508540/1/ 01124736.DOCX
CASE NO. 3:21-CV-_____
PAGE 4 OF 13

Case 3:21-cv-00228-SLG   Document 1   Filed 10/14/21   Page 4 of 13

remediation work to correct the deficiencies, followed by immediate performance of the work by ASI.

20. On February 24, 2021, ASI sent ADB a set of aerial photographs with markings for some proposed remediation work. ASI proposed that it would clean some of the spilled sealant, apply additional sealant in some places, grind or remove some excess aggregate, and replace thermoplastic signage at one location.

21. ADB deemed the proposal inadequate. It addressed only some of the problem areas identified by ADB, and did not at all address the ongoing damage to the road surface being caused by routine vehicle traffic. ADB further determined that if ASI had performed its work correctly, routine vehicle traffic would not cause the damage the parties had observed.

22. On April 19, 2021, ADB delivered to ASI written notice that it had defaulted its performance obligations under the Subcontract by failing to perform the work according to the Subcontract specifications and with the skill and care reasonably expected for that type of work.

23. The April 19, 2021 letter ("Cure Notice") identified the following defects in ASI's performance, all in need of remediation:

- Inadequate slurry coverage (i.e., less than 3/8" thickness);
- Non-uniform or rough slurry finish, with streaks, gouges, footprints, and/or a "washboard" irregular surface;

- Asphalt patches and humps protruding more than ¼" from the surface of the roadway;

- Splattering and dripping on thermoplastic lines and legends, as well as non-linear placement of lines;

- Slurry bleed-off into gutters, curbs, and other non-slurried areas;

- Inadequate chip seal coverage (i.e. less than ¼" thickness);

- Oil bubbles and residue from the Slurry; and

- Slurry too soft and subject to constant damage from routine vehicular traffic.

24. In the Cure Notice, ADB gave ASI fourteen (14) days to cure the default by submitting a plan to perform all work necessary to fully remediate the problems described above. Section 15 of the Subcontract provided that ADB could "terminate for default Subcontractor's performance for all or a part of the Work" if ASI failed to cure such default within ten (10) days written notice.

25. ASI responded to the Cure Notice on April 30, 2021. ASI disagreed as to the existence of many problems identified in the Cure Notice. ASI agreed to perform some replacement of thermoplastic signage and removal of spilled sealant. But ASI did not agree to remediate any other problems and did not agree to take any actions to address the softness of the Type II Slurry Seal and concomitant damage to the road surface.

26. ADB rejected the proposed work as insufficient. ADB demanded a comprehensive remediation plan that addressed all deficiencies identified in the Cure Notice, and immediate corrective action at the Project site.

27. ADB wrote UFCC on May 12, 2021, and submitted a formal claim on Bond No. 54-197210 on account of its intention to declare ASI in default. UFCC responded that it would evaluate the claim. From that point forward, UFCC took an active role in the dispute over ASI's performance, investigating the situation and retaining its own experts for third-party analysis.

28. On May 24, 2021, ADB informed ASI that it had concerns that the Type II Slurry Seal was too soft because it did not meet the mix requirements of the Subcontract specifications. ADB gave ASI fourteen (14) days to submit a work plan describing the removal of the Cape Seal and the application of a new one using the Subcontract specifications.

29. ASI responded on June 2, 2021. ASI refused to provide any re-work at the Project site.

30. The Government informed ADB that it would not process payment for the Project work due to defects and deficiencies in the final product. The Government's objections were identical to those in ADB's original April 19, 2021 Cure Notice.

31. On August 12, 2021, ADB and ASI conducted another site walk. The parties observed bleed-off, splattering, insufficient application, unexpected scuffing, deformation due to traffic, and uneven surfacing.

32. On August 25, 2021, ASI submitted what it described as a proposed remediation plan. The plan described only a small amount of additional micro-surface application and some removal/replacement of thermoplastic striping at one of the roads. It did not address the vast majority of the problems identified in the Cure Notice and observed during the August 12 site walk.

33. ADB rejected the proposed plan. ASI refused to provide a new plan.

34. On September 29, 2021, ADB delivered notice to ASI that its performance under the Subcontract was terminated due to its default of the Subcontract obligations. ADB informed ASI that, in the event ADB took-over and performed the re-work and remaining work needed to complete the Project, ASI would be liable for all costs ADB incurred.

35. ADB informed UFCC of ASI's termination. ADB demanded completion of the Project by UFCC, pursuant to UFCC's obligations under the Bond.

36. UFCC refused to take responsibility for the Project. It instead maintained that it had no remaining obligations to ADB, notwithstanding ASI's default and termination.

37. ADB informed UFCC that it was in default of the Bond obligations, and gave UFCC seven days to cure the default. UFCC refused to cure.

## COUNT I
## BREACH OF CONTRACT

38. ADB realleges and incorporates the statements above as though fully set forth herein.

39. By failing to perform the work described in the Subcontract according to the specifications set forth therein and according to the skill and care required in its industry for that particular type of work, ASI failed to perform according to its obligations in the Subcontract.

40. By failing to correct deficiencies and failures in the work it performed, ASI failed to perform according to its obligations in the Subcontract.

41. By failing to cure deficiencies in its performance upon receipt of notice of default, ASI failed to perform according to its obligations in the Subcontract.

42. ASI's actions constituted breach of contract.

43. As a result of ASI's breach, ADB has sustained, and continues to sustain, damages in excess of $800,000, the exact amount to be determined at trial.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF GOOD FAITH

44. ADB realleges and incorporates the statements above as though fully set forth herein.

45. Under Alaska law, there is implied in every contract, including the Operating Agreement, a covenant of good faith and fair dealing by all parties.

46. ASI violated its duty of good faith and fair dealing by refusing to correct defective work unless ADB agreed to provide additional compensation.

47. As a result of ASI's breach of its duty of good faith and fair dealing, ADB has suffered damages in excess of $800,000, the exact amount to be determined at trial.

## COUNT III
## CLAIM AGAINST PERFORMANCE BOND

48. ADB realleges and incorporates the statements above as though fully set forth herein.

49. ASI failed to deliver at the level of performance specified in the Subcontract, and refused to cure the deficiencies in its work to the satisfaction of ADB and the project owner, all of which was a default under the Subcontract, resulting in failure to complete the Project.

50. UFCC Bond No. 54-197210 obligates UFCC to ensure completion of the Project following the default of its principal, ASI.

51. As obligee, ADB is entitled to recovery on the Bond.

## COUNT IV
## PERFORMANCE BOND BAD FAITH

52. ADB realleges and incorporates the statements above as though fully set forth herein.

53. Under Alaska law, a surety such as UFCC has a duty of good faith to its obligee to act reasonably and promptly in response to a claim, particularly following a default or failure to perform by the principal.

54. UFCC's investigation of ASI's performance and subsequent denial of ADB's claim breached UFCC's obligation to act in good faith toward ADB.

55. ADB is entitled to recover its actual damages incurred on account of UFCC's bad faith conduct.

## COUNT V
## ALASKA UNFAIR TRADE PRACTICES
## AND CONSUMER PROTECTION ACT

56. ADB realleges and incorporates the statements above as though fully set forth herein.

57. ASI was engaged in "trade of commerce" within the definitions of the Alaska Unfair Trade Practices and Consumer Protection Act ("UTPA"), Alaska Statute 45.50.471 *et seq*.

58. During the performance of the work and at all times thereafter, ASI falsely represented that the Cape Seal and Slurry Seal Type II used on the Project met the specifications of the Subcontract.

AHTNA DESIGN-BUILD V. ASPHALT SURFACING  
COMPLAINT  
508540/1/ 01124736.DOCX  
CASE NO. 3:21-CV-_____  
PAGE 11 OF 13

Case 3:21-cv-00228-SLG   Document 1   Filed 10/14/21   Page 11 of 13

59. During the performance of the work and at all times thereafter, ASI falsely represented that the ongoing damage to the asphalt surface caused by ordinary vehicular traffic would subside over time.

60. During the performance of the work and at all times thereafter, ASI falsely represented that it had applied the Cape Seal in the correct thickness and according to the care skill ordinarily expected of such work in the industry.

61. A subcontractor's representation that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another, is a per se violation of AS 45.50.471(b)(6). The representations made by ASI described above violated this provision of the UTPA.

62. ADB is entitled to recover its actual damages incurred on account of ASI's violation of the UTPA, in an amount to be proven at trial but not less than $800,000, as well as ADB's attorneys' fees, interest, and treble damages thereon.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff ADB prays for the following relief against Defendants ASI and UFCC Bond No. 54-197210:

1. A money judgment against ASI and UFCC for actual damages in an amount exceeding Eight Hundred Thousand Dollars ($800,000), the exact amount to be determined at trial;

AHTNA DESIGN-BUILD V. ASPHALT SURFACING  
COMPLAINT  
508540/1/ 01124736.DOCX  
CASE NO. 3:21-CV-_____  
PAGE 12 OF 13

Case 3:21-cv-00228-SLG   Document 1   Filed 10/14/21   Page 12 of 13

2. Treble damages for violation of the UTPA;

3. Actual attorneys' fees and costs;

4. Pre-judgment and post-judgment interest at the highest allowable rate; and

5. Such other relief as this Court deems just and equitable.

DATED this 13th day of October, 2021.

        BIRCH HORTON BITTNER & CHEROT
        Attorneys for Plaintiff

By: *[signature]*

Adam W. Cook, ABA #0611071
510 L Street, Suite 700
Anchorage, AK 99501
Telephone: 907.276.1550
Facsimile: 907.276.3680
Email: acook@bhb.com

AHTNA DESIGN-BUILD V. ASPHALT SURFACING
COMPLAINT
508540/1/ 01124736.DOCX

CASE NO. 3:21-CV-_____
PAGE 13 OF 13

Case 3:21-cv-00228-SLG    Document 1    Filed 10/14/21    Page 13 of 13